UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6201-CR-DIMITROULEAS
Magistrate Judge Snow

UNITED STATES OF AMERICA,

    Plaintiff,

v.

IAN GUTHRIE,

    Defendant.

_____/

### NOTICE OF FILING

COMES NOW, the defendant, by and through the undersigned attorney, and files the attached letter from defendant, which the defendant would ask the Court to consider in passing sentence in this cause.

    Respectfully submitted,

    KATHLEEN M. WILLIAMS
    FEDERAL PUBLIC DEFENDER

By: _____
    Martin J. Bidwill
    Assistant Federal Public Defender
    Attorney for Defendant
    Florida Bar No. 868795
    400 Australian Ave. North, #300
    West Palm Beach, FL 33401
    (561)833-6288 / 833-0368 (Fax)

1



CERTIFICATE OF SERVICE

I certify that a true and correct copy of the aforementioned motion was mailed on this 2nd day of November, 2000, to Thomas Lanigan, Assistant United States Attorney, 500 East Broward Boulevard, Suite 700, Miami, Florida 33394.

Martin J. Bidwill

```
                                        F.D.C. Miami
                                        P.O. Box 019120
                                        Miami, FL 33101-9120


                                        November 1, 2000
```

Hon. William P. Dimitrouleas
U.S. District Judge
299 East Broward Boulevard
Fort Lauderdale, FL 33301

                            Re: United States v. Ian Oliver Guthrie
                                Case No. 00-6201-CR-Dimitrouleas

Dear Judge Dimitrouleas:

    The purpose of this letter is to state my reason for coming back to the United States of America.

    I am thirty-six (36) years old. I am also the father of three children. A son eighteen years old and two daughters, ages thirteen and eleven. I initially came to United States in 1980. In 1988, I was involved in a fight with two men. I suffered head and face injuries, while the two men received stab wounds. One man died as a result of his wounds.

    There was a trial where I was found guilty and thus convicted. I served eight and one half years in prison. After serving that time, I was deported to my native country, Jamaica. This occured in January of 1997.

    Before I was release from prison, I made a few promises to God, my mother and myself. I promised that I would start life afresh, by walking the straight and narrow path of doing good; stay away from anything that will jeopardize my freedom; and be a responsible father to my children.

    Being home, I send for my two daughters and they were living with me. As a Newspaper Distributor, I work very hard to support both of them. One of whom is presently in high school. My son decided he wanted to stay with his mother in this country. Nevertheless, I did my best to stay in touch, by way of phone calls and letters. I even send money to his mother whenever I could afford to do so.

    I lost contact with them for about two months. I found out later that his mother was in jail. From that point on, my son was on his own. He was now staying with members of his mother's family. However, there was no strict supervision. My son was basically taken up by the streets. I went as far as making costly phone calls in order to find his where-abouts. Whenever I catch up with him, I would talk for extensive periods, just to convey my fatherly advice.

Hon. William P. Dimitrouleas
November 1, 2000
Page 2

My worse fear came to light when I got a telephone call and was told that he was in jail. Thereafter, as I understood it, he was committed to a juvenile institution. I was informed that he was suppose to be released sometime during the month of July or August of this year. As a provision of his release, it requires that one of his parents or his legal guardian come forward and accept responsibility for him. A probation officer would also visit the house where he would be staying, in order to confirm the address. My son had no legal guardian. Furthermore, his mother was in jail and I was in Jamaica.

It was at that point in time I decided to come back to the United States of America. My plans were to go through the necessary procedures of accepting responsibility for my son; notify the appropriate authority that I intend to take him back to Jamaica with me; and as soon as it was all right for me to do so, I would do just that. In all honesty, I (unwittingly) did not think I would be in this situation. All I thought about was to get my son. Here I am now in this predicament.

Judge Dimitrouleas, I broke the laws of the United States. I humbly admit that I am wrong. I erred however, only as a father trying to help my son. I understand well that if there is no constant supervision and authoritative guidance for him, the probability is greater that he can and possibly will get into trouble again. I could not sit back and allow him to suffer the same fate as I once did. Therefore, as a father, I would do almost anything to save my son or any one of my three children.

I came back to this country only for the reason stated above. In doing so, I now put myself at the mercy of the court. My actions, however, does not withstand my respect for the laws of this country.

Judge Dimitrouleas, I ask that you look into this situation and extend some leniency when handing down your judgement.

                                        Respectfully yours,

                                        Ian Guthrie